Citation Nr: 1206478 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 09-01 240 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUE

Entitlement to an initial disability rating in excess of 20 percent for hepatitis C. 


REPRESENTATION

Veteran represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

M. Moore, Associate Counsel



INTRODUCTION

The Veteran served on active duty from August 1974 to August 1977.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Indianapolis, Indiana, which granted service connection for hepatitis C, assigning a 20 percent evaluation effective January 5, 2007. In April 2008, the Veteran submitted a notice of disagreement with the initial evaluation assigned and subsequently perfected his appeal in December 2008.


FINDING OF FACT

For the entire period on appeal, the Veteran's service-connected hepatitis C was manifested by fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain, without minor weight loss, hepatomegaly, or incapacitating episodes with a total duration of at least four weeks within a 12-month period.


CONCLUSION OF LAW

For the entire period on appeal, the criteria for an initial disability rating in excess of 20 percent for hepatitis C have not been met. 38 U.S.C.A. § 1155, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.321, 4.114, Diagnostic Code 7354 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. While the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the Veteran. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, the Board is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

I. Veterans Claims Assistance Act of 2000 (VCAA)

With regard to the Veteran's claim decided herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.159, 3.326 (2011).

Under the VCAA, when VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2011); Quartuccio v. Principi, 16 Vet. App. 183 (2002). In Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004) (Pelegrini II), the United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Prior to initial adjudication of the Veteran's claim, a letter dated in March 2007 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b)(1) (2011); Quartuccio at 187.

Additionally, the March 2007 letter informed the Veteran of how VA determines the appropriate disability rating or effective date to be assigned when a claim is granted, consistent with the holding in Dingess/Hartman v. Nicholson. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records, VA treatment records, and VA examination reports are in the file. Private treatment records have been obtained to the extent possible. The Board notes that a September 2009 statement from the Veteran indicated that he would be submitting further medical evidence. However, in the over two years since this statement, the Veteran has not submitted any additional medical evidence or identified any additional medical evidence that he wished for VA to obtain. Accordingly, the Board finds that VA has satisfied its duty to obtain relevant treatment records.

With respect to claims for increased ratings, the duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2011).

The RO provided the Veteran with VA examinations in October 2007 and June 2009. The examiners reviewed the claims file or VA treatment records, considered the Veteran's reported history, and provided a thorough physical examination. Therefore, the Board finds that the examinations of record are adequate for determining the initial disability ratings for the Veteran's hepatitis C. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim).

Additionally, there is no evidence indicating that there has been a material change in the severity of the Veteran's service-connected hepatitis C since he was last examined. See 38 C.F.R. § 3.327(a) (2011). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate examination was conducted. See VAOPGCPREC 11-95. Thus, the Board finds that a new VA examination is not necessary at this time.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the claims, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

II. Merits of the Claim

The Veteran has been assigned a 20 percent initial evaluation under Diagnostic Code 7399-7345 for his service-connected hepatitis C. He seeks a higher initial rating.

Initially, the Board notes that the appropriate diagnostic code for rating hepatitis C is Diagnostic Code 7354, not Diagnostic Code 7399-7345 as the RO has used. Whereas Diagnostic Code 7345 specifically excludes hepatitis C, only applying to chronic liver disease other than bile duct disorders and hepatitis C, Diagnostic Code 7354 specifically applies to hepatitis C. As such, the Board will consider whether the Veteran is entitled to an initial disability rating in excess of 20 percent under Diagnostic Code 7354 for his service-connected hepatitis C. See Butts v. Brown, 5 Vet. App. 532, 538 (1993).

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and the residual conditions in civilian occupations. Generally, the degree of disabilities specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. See 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2011). Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned to the disability picture that more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7 (2011). Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3 (2011). 

The veteran's entire history is reviewed when making a disability determination. See 38 C.F.R. § 4.1 (2011). Where the veteran timely appealed the rating initially assigned for the service-connected disability within one year of the notice of the establishment of service connection for it, VA must consider whether the veteran is entitled to "staged" ratings to compensate him for times since filing his claim when his disability may have been more severe than at other times during the course of his appeal. See Fenderson v. West, 12 Vet. App. 119 (1999).

Under Diagnostic Code 7354, a 20 percent evaluation is assigned for hepatitis C (or non-A, non-B hepatitis) with daily fatigue, malaise, and anorexia (without weight loss or hepatomegaly), requiring dietary restriction or continuous medication, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a total duration of at least two weeks, but less than four weeks, during the past 12-month period. A 40 percent evaluation is assigned for hepatitis C with daily fatigue, malaise, and anorexia, with minor weight loss and hepatomegaly, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a duration of at least four weeks, but less than six weeks, during the past 12-month period. A 60 percent evaluation is assigned for hepatitis C with daily fatigue, malaise, and anorexia, with substantial weight loss (or other indication of malnutrition), and hepatomegaly, or; incapacitating episodes (with symptoms such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain) having a duration of at least six weeks during the past 12-month period, but not occurring constantly. A 100 percent evaluation is assigned for hepatitis C with near-constant debilitating symptoms (such as fatigue, malaise, nausea, vomiting, anorexia, arthralgia, and right upper quadrant pain). See 38 C.F.R. § 4.114, Diagnostic Code 7354 (2011).

Sequelae, such as cirrhosis or malignancy of the liver, are to be evaluated under an appropriate diagnostic code, but the same signs and symptoms are not to be used as the basis for evaluation under Diagnostic Code 7354 and under a diagnostic code for sequelae (See § 4.114). See 38 C.F.R. § 4.114, Diagnostic Code 7354, Note (1) (2011).

For purposes of evaluating conditions under Diagnostic Code 7354, "incapacitating episode" means a period of acute signs and symptoms severe enough to require bed rest and treatment by a physician. See 38 C.F.R. § 4.114, Diagnostic Code 7354, Note (2) (2011).

For purposes of evaluating conditions in § 4.114, the term "substantial weight loss" means a loss of greater than 20 percent of the individual's baseline weight, sustained for three months or longer; and the term "minor weight loss" means a weight loss of 10 to 20 percent of the individual's baseline weight, sustained for three months or longer. The term "inability to gain weight" means that there has been substantial weight loss with inability to regain it despite appropriate therapy. "Baseline weight" means the average weight for the two-year-period preceding onset of the disease. See 38 C.F.R. § 4.112 (2011).

The Veteran has been afforded two VA examinations in association with his claim. He was first examined in October 2007. At that time, he complained of constant fatigue, malaise, nausea, arthralgia in the shoulders, hips, knees, and large joints, and vomiting twice in the preceding two months. He was told to rest as needed and had been sent home from work several times due to his disability. He reported missing 250 hours of work in the previous year due to his fatigue, depression, and joint pain, but denied any hospitalizations or incapacitating episodes. He also denied anorexia, abdominal pain, and weight loss. In fact, he reported a 20 pound weight gain over the preceding five months. His current treatment included Interferon weekly and Ribavirin twice daily with reported side effects of headaches, constant tinnitus, insomnia, and nausea. The examiner noted that the Veteran weighed 212.9 pounds. His abdomen was soft, nontender, and nondistended with no hepatomegaly. The examiner diagnosed the Veteran with hepatitis C.

In an April 2008 statement, the Veteran's wife described her observations of the Veteran's symptoms. She reported that the Veteran experienced general fatigue, listlessness, and incapacitating episodes of nausea, vomiting, severe joint pain, and loss of appetite. Similar symptoms were reported by the Veteran's coworker in a statement also dated in April 2008. The Veteran's coworker noted that the Veteran had gone to work "on days when he ha[d] no business being [at work]." The Veteran went to work because he could not get long term disability and could not afford to take time off. It was noted that the Veteran had no appetite and was not eating much. 

The Veteran was more recently afforded a VA examination in June 2009. At that time, he complained of daily weakness, fatigue, and malaise, nausea, vomiting, weekly anorexia with some dietary restrictions, and arthralgias. He denied abdominal pains and indicated that his weight fluctuated monthly within a 10 pound range. He reported a history of Interferon treatment from 2007 to 2008. Although he reported two "incapacitating episodes" lasting one to three days over the past year, he denied seeking medical care during these episodes. He also reported having experienced several two to three day long incapacitating episodes from 2007 to 2008, requiring bed rest and treatment by his private physician. The examiner noted that the Veteran weighed 212 pounds and appeared well-nourished. His abdomen was obese and slightly distended with slight tenderness upon palpation of the upper right quadrant and epigastric area. She did not observe any organomegaly or masses. She diagnosed the Veteran with residuals of hepatitis C and hepatitis C antibody positive with no active disease detected and negative viral load.

The medical evidence of record does not indicate that the Veteran experiences minor weight loss or hepatomegaly or incapacitating episodes having a total duration of at least four weeks during the past 12-month period to warrant an increased rating for his service-connected hepatitis C. The Board notes the Veteran and his wife's observations that he suffered from vomiting and anorexia, particularly during September and October 2007. Similarly, the Veteran's coworker attested to the Veteran's lack of appetite. However, there is no evidence that this resulted in minor weight loss or hepatomegaly. On the contrary, at his October 2007 VA examination, the Veteran reported having gained 20 pounds over the previous five months and the examiner did not observe any hepatomegaly. Similarly, at the June 2009 VA examination, there was no evidence of organomegaly and the Veteran reported that his weight fluctuated within a 10 pound range, but did not report any weight loss of 10 to 20 percent of his baseline weight sustained for three months or more to qualify as minor weight loss under the regulations. In this regard, the Board observes that the Veteran's weight during the 2009 examination is essentially identical to that recorded during the 2007 examination. Likewise, previous private treatment records show weight fluctuating from 201 to 210 pounds. 

While the Veteran and his wife have reported incapacitation due to hepatitis C, there is also no evidence of incapacitating episodes lasting at least four weeks. Although he reported several incapacitating episodes in 2007 to 2008, this is contradicted by his contemporaneous denial of incapacitating episodes at the October 2007 VA examination. Further, the treatment records from the Veteran's treating private physician from that period do not show any treatment for incapacitating episodes, as defined in the regulations, or prescribed bed rest. See 38 C.F.R. § 4.114, Diagnostic Code 7354, Note (2) (2011). Moreover, the Veteran has stated that his nonservice-connected depression caused at least some of his missed work. See Veteran statement, October 2007. In sum, the evidence simply does not support a finding of minor weight loss or hepatomegaly or incapacitating episodes lasting at least four weeks to warrant a higher rating of 40 percent. 

The Board has reviewed the remaining diagnostic codes relating to disabilities or diseases of the digestive system, but finds that they are inapplicable in this case. See 38 C.F.R. § 4.114, Diagnostic Codes 7200-7351 (2011). 

Additionally, the Board also notes that there is no indication in the medical evidence of record that the Veteran's symptomatology warranted other than the currently assigned 20 percent disability rating throughout the appeal period. As such, assignment of staged ratings is not warranted. See Fenderson, supra.

Accordingly, the Board finds that the claim of entitlement to an initial disability rating in excess of 20 percent for hepatitis C must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim of entitlement to an increased rating, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2011); see also Ortiz v. Principi, 274 F.3d 1361, 1365 (Fed. Cir. 2001).

The Board has also considered the potential application of other various provisions, including 38 C.F.R. § 3.321(b)(1), for exceptional cases where schedular evaluations are found to be inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2011); Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court set forth a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, as a threshold issue, the Board must determine whether the veteran's disability picture is contemplated by the rating schedule. If so, the rating schedule is adequate and an extraschedular referral is not necessary. If, however, the veteran's disability level and symptomatology are not contemplated by the rating schedule, the Board must turn to the second step of the inquiry, that is whether the veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." These include marked interference with employment and frequent periods of hospitalization. Third, if the first and second steps are met, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, a veteran's disability picture requires the assignment of an extraschedular rating.

The evidence of record does not identify any factors which may be considered to be exceptional or unusual with respect to the Veteran's service-connected hepatitis C. There is no unusual clinical picture presented, nor is there any other factor which takes the disability outside the usual rating criteria. His complaints of fatigue, malaise, anorexia, nausea, vomiting, arthralgia, and right upper quadrant pain are all specifically contemplated by the rating criteria. As the Veteran's disability picture is contemplated by the rating schedule, the threshold issue under Thun is not met and any further consideration of governing norms or referral to the appropriate VA officials for extraschedular consideration is not necessary.

In short, the evidence does not support the proposition that the Veteran's hepatitis C presents such an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards and to warrant the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) (2011). Thus, referral of this issue to the appropriate VA officials for consideration of extraschedular evaluations is not warranted in this case.

(CONTINUED ON NEXT PAGE)

ORDER

Entitlement to an initial disability rating in excess of 20 percent for hepatitis C is denied.



____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs