**Raymond H. FISHER, Appellant,**

v.

**Anthony J. PRINCIPI, Acting Secretary
of Veterans Affairs, Appellee.**

**No. 91–1816.**

United States Court of Veterans Appeals.

Jan. 14, 1993.

As Amended March 2, 1993.

Raymond H. Fisher, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Stephen A. Bergquist, Washington, DC, were on the motion, for appellee.

Before FARLEY, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Raymond H. Fisher, appeals a July 9, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which de-

nied an increased rating for hypertensive cardiovascular disease, currently evaluated as 30% disabling, and a total rating for compensation purposes based on individual unemployability. The Secretary of Veterans Affairs filed a motion for summary affirmance. The Court affirms that part of the decision denying an increased rating for hypertensive cardiovascular disease, and vacates and remands that part of the decision denying a total rating for individual unemployability. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## BACKGROUND

Appellant served in the Army from March 1953 to April 1954. Appellant has had a 30% rating for hypertensive cardiovascular disease since October 1972. He sought an increased rating in 1988. On April 1, 1988, the BVA issued a decision denying an increased rating, stating that the veteran's symptoms at that time constituted no more than a moderate disability. *Raymond H. Fisher,* BVA 87–30528 (Apr. 1, 1988).

Appellant requested a physical examination on June 22, 1988. The examination was conducted at the Veterans' Administration (now Department of Veterans Affairs) (VA) Medical Center in Dallas, Texas. The examining physician diagnosed appellant with hypertensive cardiovascular disease, and noted that his blood pressure was well-controlled with present medication. His blood pressure readings for the period of November 1987 to July 1989 were as follows: 150/110, 130/80, 130/90, 130/82, 136/84, 140/94, 152/80, 134/84, 126/80, and 144/76. In October 1988, another physician recommended that the veteran not lift over 20 pounds, not work near machinery or above ground, and not change positions quickly because he had severe blood pressure requiring high doses of medicine. In November 1988, appellant requested that his claim be reopened. A rating decision on December 2, 1988, denied an increased rating.

On March 5, 1989, appellant's claim was referred to a VA Vocational Rehabilitation Panel (VRP) for consideration of medical feasibility for training. Based upon a letter from a vocational counselor which stated, "[T]he veteran is not medically capable of successfully pursuing a program of vocational rehabilitation or subsequent employment, and he does not meet the criteria for independent living," the chairman of the VRP recommended that "the VRP concur in the decision of medical infeasibility for training." The VRP concluded that appellant had "extremely low retraining potential," and that "he had an unrealistic assessment that he could train successfully to be a frontloader operator." The VRP found that training was not reasonably feasible due to the "severity" and "generalized nature" of appellant's various deficits. The VRP stated that its finding "must" be on a permanent basis.

In May 1989, appellant made an application for increased compensation based on unemployability. A hearing was held on July 12, 1989. The hearing officer requested that another examination be performed. The examination was performed on August 9, 1989. The VA examining physician took readings three times and reported appellant's blood pressure to be 150/90, 150/90, and 148/90. The examination showed a regular heart rhythm with an occasional irregularity discerned, ascribed to premature ventricular contractions. There was a showing of a systolic apical murmur. However, the heart appeared to be normal in size. The diagnosis was hypertensive cardiovascular disease, moderately severe, but fairly well-controlled with considerable medication. After consideration of the examination, the hearing officer denied an increased rating. The VA confirmed this rating decision on November 6, 1989. Appellant appealed the decision to the BVA in April 1990.

The BVA denied an increased rating as well as a total rating for compensation purposes on July 9, 1991, in a decision which is the subject of this appeal. The Board considered the following evidence: the August 1989 examination which showed diastolic pressure readings of 90, the heart being normal in size, regular

heart rhythm, hypertensive cardiovascular disease, moderately severe, and blood pressure fairly well-controlled with considerable medicine; the November 1987 to July 1989 blood pressure readings which showed diastolic pressure readings of between 76 and 110; and the October 1988 statement which recommended that the veteran not lift over 20 pounds or change positions quickly. The Board relied on the pertinent VA diagnostic criteria, 38 C.F.R. § 4.104, Diagnostic Code (DC) 7007 (1991), which provides that increased compensation (to 60%) is appropriate upon a showing of: a marked enlargement of the heart, diastolic pressure readings of 120 or more, which may later have been reduced, dyspnea on exertion, and the preclusion of more than light manual labor. The Board concluded that the evidence did not show the presence of the requisite manifestations to warrant a 60% increase, namely, marked heart enlargement, diastolic pressure readings of 120 or more, and exertional dyspnea.

Regarding the decision as to a total rating for compensation purposes, the Board noted 38 C.F.R. § 4.16 (1991), which provides for total disability ratings for compensation based on unemployability of the individual. No distinction was made in the Board's decision as to the dichotomy between § 4.16(a) and (b). The Board merely stated that the dispositive issue is not whether the veteran is currently unemployed, but rather, "the critical factor is the impact of service-connected disorders on his ability to work." *Raymond H. Fisher*, BVA 90–24829, at 4 (July 9, 1991). The Board found that:

> [T]he evidence does not demonstrate that this disorder [the hypertension], in and of itself, is so debilitating as to preclude him from securing or maintaining a substantially gainful occupation consistent with his education and employment background. While his hypertensive cardiovascular disease may preclude more than light manual labor, the evidence does show that the veteran is able to engage in some physical activities.

*Id.* The Board discounted the VRP memorandum by stating, "[T]hat memorandum indicates that this conclusion [the VRP rec-

ommendation that training was not reasonably feasible] was based on a review of the history of his service-connected and nonservice-connected [sic] disorders . . . ," and that "the effect of any nonservice-connected [sic] disorders on the veteran's industrial adaptability cannot be considered in determining entitlement to a total rating for compensation purposes." *Id.* at 5. Accordingly, the BVA denied a total rating for compensation purposes.

## ANALYSIS

This Court must affirm the factual findings of the BVA unless those determinations are "clearly erroneous." *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52–53 (1990). "[I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, we cannot overturn them." *Id.* at 53. After careful review of the record, this Court concludes that there is a plausible basis in the record for the BVA's decision to deny an increased rating for hypertensive cardiovascular disease on the ground that the schedular requirements of 38 C.F.R. § 4.104, DC 7007, for a 60% rating for hypertensive heart disease have not been met. The Board plausibly found that the evidence failed to show a marked enlargement of the heart, diastolic pressure readings of 120 or more, dyspnea on exertion, and preclusion of more than light manual labor. The decision of the BVA concerning his rating decision as to hypertension will thus be affirmed.

Regarding the denial of entitlement to a total rating for compensation purposes based on individual unemployability, while it is correct that, under 38 C.F.R. § 4.16(a), a 30% disability rating does not entitle appellant to an extra-schedular total disability rating, the rating board must also consider the applicability of § 4.16(b). This provision states:

> It is the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall

be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation and Pension Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in paragraph (a) of this section. The rating board will include a full statement as to the veteran's service-connected disabilities, employment history, educational and vocational attainment and all other factors having a bearing on the issue.

In addition, 38 C.F.R. § 3.321(b)(1) (1991) provides:

Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, the Chief Benefits Director or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extra-schedular evaluation commensurate with an average earning capacity impairment due exclusively to the service-connected disability or disabilities. The government norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards.

■■■ In this case, the appellant's employment history, the heavy medications he had to take for his service-connected hypertension, and his apparent illiteracy are all factors that might have impact on his employability; such factors could have led the Director of VA's Compensation and Pension Service to consider an extra-schedular total rating notwithstanding the relatively low schedular rating accorded to the veter-

an. The employment-related back injury is not service-connected, so it will not be considered. As this Court interprets 38 C.F.R. §§ 3.321 and 4.16(b), the rating schedule will apply unless there are "exceptional or unusual" factors which render application of the schedule impractical. The decision (or non-decision) by the Regional Office (RO) whether to refer a case to the Director for extra-schedular *consideration* under § 4.16(b) is an adjudicative decision. Of course, in the absence of exceptional or unusual circumstances, the failure to deal with § 4.16(b) would at the most be harmless error, as there would be no well-grounded claim. However where, as in this case, extraneous circumstances are presented that the Director might well consider exceptional or unusual, the RO must specifically adjudicate the issue of whether referral to the Director is indicated, and, if not referred to the Director, that adjudication is the subject of an appeal. As in any other appeal, the BVA must make the requisite findings of fact and give reasons or bases for its decision. Since the § 4.16(b) issue was not adjudicated by the Board, a remand is necessary.

## CONCLUSION

That part of the decision of the BVA denying entitlement to an increased rating for hypertensive cardiovascular disease is AFFIRMED. That part of the decision of the BVA denying entitlement to a total rating for compensation purposes based on individual unemployability is VACATED and the case is REMANDED for adjudication consistent with this opinion. A final decision by the Board following the remand will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new notice of appeal not later than 120 days after the date on which notice of the Board's new final decision is mailed to appellant.