Citation Nr: 1206477 
Decision Date: 02/22/12 Archive Date: 03/01/12

DOCKET NO. 09-02 352 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin


THE ISSUE

Entitlement to an increased rating for chronic otomastoiditis of the left ear.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

J. Barone, Counsel



INTRODUCTION

The Veteran had active service from October 1994 to February 1995 and from January 2003 to August 2003.

This matter comes before the Board of Veterans' Appeals (Board) from a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin.


FINDINGS OF FACT

1. The Veteran's left ear disability is manifested by a perforated tympanic membrane and pain.

2. The Veteran's left ear disability includes a tender surgical scar behind her left ear.


CONCLUSIONS OF LAW

1. The criteria for an evaluation in excess of 10 percent for chronic otomastoiditis of the left ear have not been met. 38 U.S.C.A. §§ 1155 , 5107 (West 2002 & Supp. 2010); 38 C.F.R. §§ 4.31 , 4.87, Diagnostic Codes 6200, 6211 (2011).

2. The criteria for a 10 percent evaluation for a tender surgical scar have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. Part 4, Diagnostic Code 7804 (2011).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002 & Supp. 2010); 38 C.F.R. § 3.159(b) (2011); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. VCAA notice should be provided to a claimant before the initial unfavorable RO decision on a claim. See Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

On March 3, 2006, the Court of Appeals for Veterans Claims (Court) issued a decision in the consolidated appeal of Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006), which held that the VCAA notice requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) apply to all five elements of a service connection claim. Those five elements include: 1) Veteran status; 2) existence of a disability; 3) a connection between the Veteran's service and the disability; 4) degree of disability; and 5) effective date of the disability. The Court held that upon receipt of an application for a service-connection claim, 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) require VA to review the information and the evidence presented with the claim and to provide the claimant with notice of what information and evidence not previously provided, if any, will assist in substantiating or is necessary to substantiate the elements of the claim as reasonably contemplated by the application. Id. at 486. 

A letter dated in November 2006 discussed the evidence necessary to support a claim for increase. The Veteran was invited to submit or identify pertinent evidence. The evidence of record was listed, and the Veteran was told how VA would assist her in obtaining additional relevant evidence. This letter also discussed the manner in which VA determines disability ratings and effective dates. A November 2007 letter provided essentially the same information.

The Board finds that the content of the notice provided to the Veteran fully complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) regarding VA's duty to notify. The Veteran has been provided with every opportunity to submit evidence and argument in support of her claim and to respond to VA notices. Further, the Board finds that the purpose behind the notice requirement has been satisfied because the Veteran has been afforded a meaningful opportunity to participate effectively in the processing of her claim. 

With respect to VA's duty to assist, VA and private treatment records have been obtained and associated with the record. The Veteran was afforded the opportunity to testify before the undersigned. VA examinations have been conducted. The Board finds that the examinations were adequate in that they were conducted by neutral, skilled providers who reviewed the record, interviewed the Veteran, and performed appropriate physical examinations prior to providing their conclusions. The Veteran has not otherwise identified any additional evidence or information which could be obtained to substantiate the claims. The Board is also unaware of any such outstanding evidence or information. Therefore, the Board is also satisfied that VA has complied with the duty to assist requirements of the VCAA and the implementing regulations.

For the foregoing reasons, it is not prejudicial to the appellant for the Board to proceed to a final decision in this appeal.

Analysis

Disability ratings are based upon schedular requirements that reflect the average impairment of earning capacity occasioned by the state of a disorder. 38 U.S.C.A. §1155. Separate rating codes identify the various disabilities. 38 C.F.R. Part 4 (2011). In determining the level of impairment, the disability must be considered in the context of the entire recorded history, including service medical records. 38 C.F.R. §4.2 (2011). 

An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. §4.10 (2011). 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. §4.7 (2011). 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. 38 C.F.R. §§4.1, 4.2 (2011); see also Francisco v. Brown, 7 Vet. App. 55 (1994). In Hart v. Mansfield, 21 Vet. App. 505 (2007), however, the Court held that "staged ratings" are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. In this case the Board has concluded that the disability has not significantly changed and that a uniform evaluation is warranted for the period considered.

Service connection was granted for left ear chronic otomastoiditis via a January 2006 rating decision; the RO assigned a noncompensable evaluation. This rating decision also granted service connection for left ear hearing loss and tinnitus. A February 2006 rating decision indicated that review of additional medical evidence did not warrant a change in the previous decision. In October 2006 the Veteran submitted a claim for increase, indicating that she believed that the last rating decision was probably correct at the time she filed her claim, but since then her condition had changed. She noted that she had Eustachian tube dysfunction and a perforated ear drum that caused constant pain in her left ear. 

VA treatment records indicate that the Veteran underwent a CT scan in February 2006. The radiologist indicted that the internal auditory canals were not dilated and that the inner and middle ear appeared grossly normal. 

An April 2006 VA treatment record indicates that the Veteran had abundant cercumen and debris and otitis externa on the left. She was prescribed drops. 

In May 2006 the Veteran presented with otalgia. She had fluffy white debris and erythema in the external ear canal, consistent with fungus. Additional medications were prescribed. On recheck two weeks later, she stated that the pain was worse and was radiating somewhat into her left neck. Following examination, the assessment was fungal otitis externa; additional medications were provided. Four days later, the Veteran reported that her pain was worse. She denied otorrhea. The provider noted the lack of response of the otitis externa to medication; the Veteran was referred for a CT scan. CT scan revealed normal ossicles, cochlea, semicircular canals and eighth nerve. Mild retraction of the left tympanic membrane was noted. The left mastoid hair cells were smaller with destruction of the hair cell septa and contained a small amount of fluid in their dependent aspect. The impression was no abnormality in the external, middle, or inner ears. The radiologist noted possible left mastoiditis.

In June 2006 the Veteran was seen by a VA infectious diseases fellow. The history of the Veteran's left ear complaints was reviewed. The physician noted that the Veteran had been prescribed medication for a possible fungal infection but that fungal cultures had been negative. The Veteran reported that in the previous two weeks, her symptoms had resumed, to include ear pain, pounding, and moist discharge. 

An October 2006 VA treatment record indicates that autoimmune laboratory tests were negative. He also noted that the Veteran was seen by dermatology and that there was no specific area to biopsy. He indicated that the Veteran had a history of tympanic membrane perforation with successful typmanoplasty. The Veteran's chief complaint was otalgia with occasional radiation down her neck. She denied otorrhea. On examination the left external ear canal was mildly erythematous and slightly moist; there was no purulence or debris. The tympanic membrane had a perforation with clean edges. The assessment was chronic otitis externa, non-infectious appearing. The provider noted that he would consult with another physician for suggestions concerning the etiology of the Veteran's complaints. 

A January 2007 rating decision granted a 10 percent evaluation for the Veteran's chronic left ear otomastoiditis, effective April 2006.

In March 2007 the Veteran was seen by a VA otolaryngologist. She reported significant otalgia with occasional radiation down her neck and toward the posterior mastoid area. The provider noted that the Veteran had no temporomandibular joint symptoms. He indicated that when the Veteran was last seen she was discussed with a neurologist with recommendations to treat her with a course of oral steroids. The Veteran reported that she had not noticed a change in her symptoms with that treatment. Physical examination revealed a normal left external auditory canal with no purulence, erythema, or debris. The tympanic membrane had a 20 percent perforation with clean edges. There was no effusion, mass or cholesteatoma. There was a post auricular scar that was well healed. The provider noted that if the Veteran's evaluation remained without an origin despite a thorough evaluation, neuropathic pain or an atypical migraine variant might be the origin of her pain. He noted that she had undergone multiple surgeries on her ear prior to the onset of her pain and she might have a neuroma or other local neurologic abnormality to explain the pain. 

In July 2007 a VA otolaryngologist noted that the Veteran had been previously treated for otitis externa without any change in her chronic left otalgia. She indicated that the Veteran was status post three tympanoplasties within the previous 10 years, her most recent surgery being a few years previously. The physician noted that autoimmune labs had been negative. Following examination, the physician indicated that a cholesteatoma was unlikely and that the pain was most likely related to the surgery, with neuropathy versus possible neuroma. 

In an October 2007 statement, the Veteran indicated that she had constant pain in her left ear radiating down her neck. She noted that none of the treatment offered by VA had alleviated her symptoms. 

In November 2007 a VA provider indicated that the Veteran's chronic otalgia suggested a neurologic etiology. 

On VA ear disease examination in December 2007, the Veteran's history was reviewed. She stated that her significant symptoms started about one and a half years previously with pounding pain in the left ear a few times per week that often radiated down the side of her neck. She rated her pain as 7/10 to 9/10. She denied vertigo but did describe a feeling of light headedness a few times per week and promoted by activity. She denied otorrhea. Physical examination revealed a normal left external ear with a post auricular scar. The external auditory canal was normal. There was no erythema, drainage, or debris. The tympanic membrane had a 20 percent anterior perforation with clean edges and no sign of cholesteatoma. There was no effusion and no masses were present. The assessment was left ear otalgia. The examiner noted that the Veteran had a history of three surgeries for chronic perforation. He indicated that the origin of the Veteran's pain was uncertain and suggested that it could be a neuropathic pain related to the previous surgery or formation of a neuroma or other neurologic abnormality. He also suggested migraine type headache or atypical migraine.

A March 2008 VA otolaryngology record indicates that the Veteran had otalgia with negative clinical and radiographic abnormality contributing to her pain. The plan included referral to the pain clinic.

In July 2008 a VA examiner concluded that the Veteran did not have Meniere's disease.

A November 2008 VA pain clinic record notes the Veteran's report of pain within her left ear. She noted that the pain sometimes radiated down the left neck and behind the ear. Examination revealed a well healed surgical scar behind the left ear. The provider indicated that the history, radiology results, and examination were consistent with likely left ear neuropathic pain. 

In February 2009 a VA provider indicated that the Veteran had chronic left ear neuropathic pain with possible tendonitis or mastoiditis, but that imaging had shown no sign of mastoiditis. 

In May 2009 a VA anesthesiology/pain fellow noted that the Veteran had a well-healed surgical scar in the post auricular area. She had pain with moderate palpation in the inferior portion of the post auricular area. The physician noted that the Veteran's post auricular neuropathic pain was likely secondary to neuralgia from the surgical scar site. 

VA examination in May 2009 concluded that the Veteran did not have a diagnosis of Meniere's disease. 

A VA neurological examination was carried out in August 2009. The Veteran's history was reviewed. Physical examination revealed normal cranial nerves. The examiner noted that there was a four-inch long scar behind the left ear. There was slight tenderness to palpation over the mastoid tip. The left ear canal was moist with no active discharge. The tympanic membrane was perforated. The examiner diagnosed chronic left post auricular neuralgia. He concluded that there was no impairment of the cranial nerves.

The Veteran's left ear disability is currently evaluated as 10 percent disabling pursuant to 38 C.F.R. § 4.87, Diagnostic Code 6211-6200. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. The additional code is shown after a hyphen. 38 C.F.R. § 4.27 (2011). 38 C.F.R. § 4.87, Diagnostic Code 6211 pertains to perforation of the tympanic membrane and allows a noncompensable evaluation. Diagnostic Code 6200 pertains to chronic suppurative otitis media, mastoiditis, or cholesteatoma (or any combination), and allows a maximum 10 percent evaluation. As such, the Veteran is in receipt of the maximum rating allowed for the disability characterized as chronic otomastoiditis.

The Board notes, however, that Diagnostic Code 6200 expressly provides that separate ratings are to be assigned for hearing impairment and complications such as labyrinthitis, tinnitus, facial nerve paralysis, or bone loss of the skull. Review of the record reveals no findings of labyrinthitis or bone loss associated with this disability. The Veteran is currently in receipt of the maximum 10 percent evaluation for tinnitus related to this disability. 

The Board has also considered whether it is appropriate to assign a separate rating under the criteria for evaluation of diseases of the cranial nerves. In that regard, the Board observes that 38 C.F.R. § 4.124 states that cranial neuralgia, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. The diagnostic criteria for diseases of the cranial nerves are found at 38 C.F.R. § 4,124a, Diagnostic Codes 8205-8412. Incomplete paralysis of the cranial nerves is evaluated as 10 percent disabling. As noted by the RO and demonstrated by the evidence of record, the predominant symptom related to the Veteran's left ear disability is otalgia, or ear pain. This symptom has been found to be the result of neuralgia. As such, the currently assigned 10 percent evaluation contemplates the Veteran's pain complaints, and assignment of an additional 10 percent under the diagnostic code for neuralgia would constitute impermissible pyramiding. See 38 C.F.R. § 4.14 (the evaluation of the same manifestation under different diagnoses is to be avoided). 

Finally, the Board has determined that a separate evaluation is warranted for the post-surgical scar associated with the Veteran's left ear disability. In this regard, the Board observes that VA physicians have noted tenderness associated with the scar. Accordingly, a 10 percent evaluation is warranted pursuant to 38 C.F.R. § 4.118, Diagnostic Code 7804. A higher evaluation is not for application under this code absent a finding of three or four scars that are unstable or painful. The Board has also considered application of other diagnostic codes pertaining to skin disabilities but finds that Diagnostic Code 7804 is most appropriate in this case. 

The Board notes that the Veteran is competent to report that her disability is worse. However, the more probative evidence consists of that prepared by neutral skilled professionals, and such evidence demonstrates that the currently assigned evaluations for the Veteran's left ear disability are appropriate. 

Extraschedular Consideration

Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2011); see also Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a Veterans entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the level of disability and symptomatology and is found to be inadequate, the Board must then determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the initial inquiry posed by Thun, the Board has been unable to identify an exceptional or unusual disability picture with respect to the Veteran's service-connected left ear disability. The medical evidence fails to demonstrate symptomatology of such an extent that application of the ratings schedule would not be appropriate. In fact, as discussed in detail above, the symptomatology of the Veteran's disability is specifically contemplated under the appropriate rating criteria. Accordingly, the Board finds that the Veteran's disability picture has been contemplated by the ratings schedule.

Since the available schedular evaluation adequately contemplates the Veteran's level of disability and symptomatology, the second and third questions posed by Thun become moot. In short, the evidence does not support the proposition that the Veteran's service connected disability presents such an exceptional or unusual disability picture as to render impractical the application of the regular schedular standards and warrant the assignment of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) (2011).


ORDER

Entitlement to an evaluation in excess of 10 percent for chronic otomastoiditis of the left ear is denied.

Entitlement to a separate 10 percent evaluation for a tender post-surgical scar is granted, subject to the controlling regulations applicable to the payment of monetary awards. 



____________________________________________
Thomas H. O'Shay
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs