Citation Nr: 1434281 
Decision Date: 07/18/14 Archive Date: 08/04/14

DOCKET NO. 10-43 738 ) DATE
 )
 )

Received from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to an increased rating for posttraumatic stress disorder (PTSD), currently rated as 50 percent disabling. 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

A. Cryan, Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to June 1970.

 This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2008 rating decision issued for the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. 

The Veteran's claim was remanded by the Board for additional development in March 2013. In an August 2013 rating decision, the Veteran's PTSD rating was increased from 30 to 50 percent effective March 31, 2008, the date that the Veteran filed his claim for an increased rating. Applicable law mandates that when an appellant seeks an increased rating, it will generally be presumed that the maximum benefit allowed by law and regulation is sought, and it follows that a claim remains in controversy where less than the maximum benefit available is awarded. A.B. v. Brown, 6 Vet. App. 35 (1993). Because the maximum rating available was not granted, the issue remains in appellate status. 


FINDING OF FACT

The Veteran's PTSD has been manifested by occupational and social impairment productive of no more than reduced reliability and productivity due to symptoms such as disturbances of motivation and mood and difficulty establishing and maintaining effective work and social relationships.


CONCLUSION OF LAW

The criteria for a rating in excess of 50 percent for PTSD are not met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.102, 3.321(b)(1), 4.1, 4.7, 4.130, Diagnostic Code 9411 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

Upon receipt of a substantially complete application, VA must notify the claimant and any representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004). If VA does not provide adequate notice of any of element necessary to substantiate the claim, or there is any deficiency in the timing of the notice, the burden is on the claimant to show that prejudice resulted from a notice error. Shinseki v. Sanders, 129 S.Ct. 1696 (2009). 

The Board finds that any defect with regard to the timing or content of the notice to the appellant is harmless because of the thorough and informative notices provided throughout the adjudication and because the appellant had a meaningful opportunity to participate effectively in the processing of the claim with an adjudication of the claim by the RO subsequent to receipt of the required notice. The record does not show prejudice to the appellant, and the Board finds that any defect in the timing or content of the notices has not affected the fairness of the adjudication. Mayfield v. Nicholson, 19 Vet. App. 103 (2005); Dingess v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the Veteran was notified in letters dated in May 2008, January 2009, and June 2013.

The Veteran has neither alleged nor demonstrated any prejudice with regard to the content or timing of the notice provided. Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (burden of showing that an error is harmful or prejudicial falls on party attacking agency decision); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Thus, VA has satisfied its duty to notify the appellant and had satisfied that duty prior to the adjudication in the July 2013 supplemental statement of the case. Overton v. Nicholson, 20 Vet. App. 427 (2006) (veteran afforded a meaningful opportunity to participate effectively in adjudication of claim, and therefore notice error was harmless). 

The Board also finds that the duty to assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. The appellant has not referred to any additional, unobtained, relevant, available evidence. VA has obtained examinations with respect to the claim. Thus, the Board finds that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Disability ratings are determined by the application of a schedule of ratings, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. § 4.1 (2013). Where entitlement to compensation has already been established and an increase in the assigned rating is at issue, it is the present level of disability that is of primary concern. Although the recorded history of a particular disability should be reviewed in order to make an accurate assessment under the applicable criteria, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2013).

The Veteran claims that his PTSD has increased in severity and warrants a rating in excess of 50 percent. 

The Veteran's PTSD has been rated under Diagnostic Code 9411 (PTSD). The criteria of Diagnostic Code 9411 provide for a 100 percent rating where the evidence shows total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name.

The criteria provide for a 70 percent rating where the evidence shows occupational and social impairment, with deficiencies in most areas, such as work, school, family relations judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence) spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

The criteria provide for a 50 percent rating where the evidence shows occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

The psychiatric symptoms listed in the rating criteria are not exclusive, but are examples of typical symptoms for the listed percentage ratings. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The Global Assessment of Functioning (GAF) score is a scale indicating the psychological, social, and occupational functioning on a hypothetical continuum of mental health- illness. A GAF score of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships. A GAF score of 51 to 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co- workers). Richard v. Brown, 9 Vet. App. 266 (1996); American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition (DSM-IV).

At an October 2008 VA examination, the Veteran was noted to be self-employed as a plumber. He endorsed depression and reported flashbacks on a daily basis and nightmares on occasion. Mental status examination revealed that the Veteran was oriented in four spheres and he had appropriate hygiene. His mood was sad and his affect was blunted. There were no delusions, hallucinations, illusions, or obsessional rituals. The Veteran did not endorse panic attacks. His thought processes were intact and goal-directed. There was no impairment of judgment or abstract thinking and the Veteran's recent and remote memory was intact. There was no suicidal or homicidal thinking noted. The examiner diagnosed PTSD and assigned a GAF score of 55. The examiner concluded that the Veteran's symptoms were chronic in nature and caused difficulty in his social and work environment, but also noted that he has continued to work for himself. The examiner stated that the Veteran's ability to get along with other people was "not good."

At an August 2010 VA examination, the Veteran reported that he had never been married and he lived with his mother who had Alzheimer's. He indicated that he had almost no friends other than Vietnam veterans. He stated that he participated in almost no activities and could not tolerate being around other people. He denied suicide attempts but endorsed inappropriate anger. Mental status examination revealed that the Veteran was oriented in three spheres. He was clean, neatly groomed, and appropriately dressed. His affect was appropriate and he was friendly and cooperative with an anxious mood. His thought process and thought content were unremarkable. There were no delusions or hallucinations present. The Veteran endorsed panic attacks once or twice a week. He did not display inappropriate behavior or have obsessive or ritualistic behavior. The Veteran endorsed homicidal thoughts with no intention and suicideal ideations with no plan. He was noted to have fair impulse control and normal recent, remote, and immediate memory. The examiner indicated that the Veteran worked twenty hours a week as a self-employed plumber. The examiner diagnosed PTSD and assigned a GAF score of 52. The Veteran was noted to have severe PTSD with virtually absent social function and reduced occupational function which requires he work alone. The examiner concluded that there was not total occupational and social impairment but some occupational and social impairment due to deficiencies in judgment, thinking, family relations, work and mood. The examiner noted that the Veteran had periods of sadness and heard hallucinatory noises at night. 

At a July 2013 VA examination, the Veteran reported that he lived with his mother who was suffering from Alzheimer's. He indicated that he was never married and had no children. He had a close relationship with one sister, spoke to another sister, and was not close to his brother. He was noted to have gatherings with his family at his home three times a month and he had one close friend. He reported that he watched television and cared for his mother's three turtles and also cared for the neighbor's house when they were out of town. He endorsed anger, lack of motivation, sleep problems, and anxiety. Mental status evaluation revealed that the Veteran was oriented in three spheres with appropriate grooming and hygiene. His speech was goal-directed and his insight was intact. No psychotic symptoms, hallucinations, or delusions were noted. His mood was anxious and depressed and his affect was congruent. The Veteran reported a vague history of suicidal ideation with no attempts. The examiner indicated that the Veteran's short-term memory was moderately impaired and his long-term memory was intact. The Veteran's concentration and abstract thinking were intact. The examiner noted that the Veteran had a depressed mood, anxiety, chronic sleep impairment, mild memory loss, difficulty in establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a worklike setting. The Veteran was noted to be self-employed and had missed several days of work due to low motivation and mood symptoms. The examiner indicated that the Veteran's PTSD symptoms were mild to moderate. The examiner diagnosed PTSD and assigned a GAF score of 68.

VA outpatient treatment reports dated from November 2007 to January 2013 reflect that the Veteran was seen for psychiatric treatment. In January 2008, he was noted to be alert and oriented with a neutral mood and appropriate affect and no psychotic thought processes or death wish. Similar findings were reported in April 2008, July 2008, December 2008, May 2009, June 2009, October 2009, December 2009, April 2010, June 2010, November 2010, June 2011, and April 2012 although his mood was noted to be euthymic in July 2008, "neither elated or depressed" in December 2008 and May 2009, neutral in June 2009, dysphoric and mildly depressed in October 2009, December 2009, and April 2010, mildly depressed in June 2010, and depressed in November 2010, June 2011, and April 2012. He was assessed with PTSD at those times, and assigned GAF scores of 62 at all times except in June 2010 when he was assigned a GAF score of 64, in November 2010 and June 2011 when he was assigned a GAF score of 58, and in April 2012 when he was assigned a GAF score of 60. He was noted to be taking medication for his psychiatric symptoms. In November and December 2012, the Veteran was noted to be oriented in four spheres with coherent and relevant speech with logical thought processes and no homicidal or suicidal ideations. His memory was intact and he had an appropriate affect and euthymic mood. He was appropriately groomed at those times and no GAF scores were assigned at those times. 

Having reviewed the complete record, the Board finds that the preponderance of the evidence is against granting a rating in excess of 50 percent at any time during the pendency of the appeal. The medical evidence, consisting of VA outpatient treatment reports dated from November 2007 to January 2013 and 
VA examination reports dated in October 2008, August 2010, and June 2013, demonstrates findings consistent with anger, irritability, anxiety, panic attacks, mild memory loss, and disturbances of motivation and mood. However, the Veteran's disability was not manifested by suicidal ideation, obsessional rituals which interfered with routine activities, near-continuous panic or depression, impaired impulse control, spatial disorientation, neglect of personal appearance and hygiene, or an overall level of symptomatology supportive of a higher rating.

The Board finds that the evidence supports no more than a 50 percent rating under Diagnostic Code 9411, which contemplates occupational and social impairment with reduced reliability and productivity due to symptoms such as impairment of judgment, disturbances of motivation and mood, and difficulty maintaining effective relationships. The evidence does not indicate that the Veteran's PTSD was manifested by persistent delusions, obsessional rituals which interfered with routine activities, near-continuous panic or depression, spatial disorientation, or neglect of personal appearance and hygiene as none of those symptoms are shown in the record. 

The Board acknowledges that the Veteran was noted to have heard auditory hallucinations at night at the August 2010 VA examination. However, mental status examinations revealed no auditory or visual hallucinations at the examinations or during his VA treatment and all other entries are negative for any reference to auditory hallucinations. Additionally, while the Veteran has at times endorsed suicidal ideations, these thoughts were noted to be vague with no intent or plan. The Veteran's symptoms best approximate occupational and social impairment with reduced reliability and productivity. Consequently, the Board finds that the greater weight of the evidence is against granting a rating in excess of 50 percent at any point during the appeal period at issue. 

With respect to the Veteran's GAF scores, the evidence of record documents GAF scores ranging from 52 to 68 for the time period at issue which contemplate mild to moderate symptoms. GAF scores are not, in and of themselves, the dispositive element in rating a disability, and the Board generally places more probative weight on the specific clinical findings noted on examinations. In this case, the clinical findings during the time period at issue do not substantiate a GAF score indicative of more than moderate symptomatology. The evidence does not establish that the Veteran's PTSD symptomatology resulted in major deficiencies or met the symptomatology for a rating greater than 50 percent. The Board finds that the clinical findings of record demonstrate a degree of impairment consistent with no more than a 50 percent rating.

Accordingly, the Board finds that the criteria for a rating higher than 50 percent have not been met. The preponderance of the evidence is against the claim for increase and the claim is denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Board has considered whether referral for consideration of the assignment of an extraschedular rating is warranted. The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. If so, factors for consideration in determining whether referral for an extraschedular rating is necessary include marked interference with employment or frequent periods of hospitalization that indicate that application of the regular schedular standards would be impracticable. Thun v. Peake, 22 Vet. App. 111 (2008); Fisher v. Principi, 4 Vet. App. 57 (1993); 38 C.F.R. § 3.321(b)(1) (2013). 

The Board finds that referral is not appropriate in this case. The evidence of record does not show that the Veteran's service-connected PTSD is not adequately contemplated by the available schedular ratings or that the disability presents an exceptional or unusual picture. Higher schedular ratings are assigned for more severe psychiatric symptomatology, which has not been demonstrated in this case. The disability at issue has not been shown to markedly interfere with employment beyond that contemplated in the assigned rating, to warrant frequent periods of hospitalization, or to otherwise render impractical the application of the regular schedular standards. While the Veteran's PTSD has undoubtedly resulted in some missed work, the examiners of record did not find that PTSD markedly interferes with employment. Moreover, the Veteran's psychiatric disorder has not resulted in frequent periods of hospitalization. Therefore, the Board finds that referral for consideration of an extraschedular rating is not warranted. 38 C.F.R. § 3.321(b)(1) (2013); Bagwell v. Brown, 9 Vet. App. 337 (1996); Floyd v. Brown, 9 Vet. App. 88 (1996); Shipwash v. Brown, 8 Vet. App. 218 (1995).

 (CONTINUED ON NEXT PAGE)

ORDER

Entitlement to an increased rating for PTSD, currently rated as 50 percent disabling, is denied.



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs