http://www.va.gov/vetapp16/Files6/1644954.txt

Citation Nr: 1644954 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 10-40 864A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office Center in Wichita, Kansas

THE ISSUES

1. What evaluation is warranted from August 26, 2012 to July 19, 2015 for residuals of a left leg stress fracture? 

2. What evaluation is warranted since July 20, 2015 for residuals of a left leg stress fracture? 

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

Joseph Montanye, Associate Counsel 

INTRODUCTION

The Veteran had active military service from January 1967 to August 1970.

This matter comes before the Board of Veterans' Appeals (Board or BVA) on appeal from a May 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. The case was certified by the Wichita, Kansas RO. 

In September 2014, the Veteran testified at a videoconference hearing. A transcript of that hearing is of record.

In December 2014, the Board denied entitlement to a compensable rating for residuals of stress fracture of the left leg for the period from August 25, 2008 to August 24, 2012. The Board remanded the issue of entitlement to a compensable rating for the period since August 25, 2012, for additional development and a new VA examination. A VA examination was held in July 2015, and the remand instructions were substantially complied with. 

In a September 2015 rating decision, the Veteran's residuals of left leg stress fracture were assigned a 10 percent rating, effective July 20, 2015. As this is only a partial grant of the benefit sought, this stage remains before the Board. See A.B. v. Brown, 6 Vet. App. 35, 38 (1993). 

The Veteran's representative submitted a post-remand brief arguing that the effective date for the assignment of the 10 percent rating should be from August 2008. The question as to what evaluation was warranted from August 25, 2008 to August 24, 2012 was adjudicated in the Board's prior decision. That decision is final. 38 U.S.C.A. § 7104 (West 2014). The period since August 26, 2012 is the subject of this decision. 

The claims file is now entirely in VA's secure electronic processing systems, Virtual VA and Veterans Benefits Management System (VBMS).

The issues of whether new and material evidence has been received to reopen a claim for service connection for residuals of a total left knee replacement, to include as secondary to residuals of a left leg stress fracture; and entitlement to compensation pursuant to 38 U.S.C.A. § 1151 for residuals of left knee surgery were raised at the September 2014 videoconference hearing. These issues have not, however, been adjudicated by the Agency of Original Jurisdiction (AOJ); therefore, the Board does not have jurisdiction over them. These issues were referred to the AOJ for appropriate action in the December 2014 remand, and as the record is absent any evidence of action, they are again referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2015).

FINDINGS OF FACT

1. At no time between August 24, 2012 and July 19, 2015 were residuals of a left leg stress fracture manifested by malunion or nonunion of the left tibia or fibula. 

2. Since July 20, 2015, the Veteran's residuals of a left leg stress fracture have not been manifested by malunion or nonunion of the left tibia or fibula.

CONCLUSIONS OF LAW

1. The criteria for a compensable evaluation for residuals of a left leg stress fracture between August 24, 2012 and July 20, 2015 were not met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5262 (2015).

2. The criteria for the assignment of an evaluation in excess of 10 percent for residuals of a left leg stress fracture have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5256-5263.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claim herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

The Veteran testified in September 2014 that he deserved a compensable rating for residuals of a left leg stress fracture. He explained that his left leg hurt him and interfered with his ability to sleep. The Veteran stated that he had to sleep sitting up and that his prescribed pain pills did little to combat his left leg pain. He went on to note that in 2009 his left leg was bothering him, that VA informed him that he needed a left knee replacement, and he discussed complications with the left knee specifically. Later in his testimony the Veteran repeated his contention that pain kept him up at night, but he related the pain specifically to his left knee and not his leg generally. The Veteran reported having frequent falls, difficulty negotiating stairs, and the use of ambulating devices because of his leg. The terms leg and knee were used interchangeably throughout the testimony, but the Veteran did explain that the problems were primarily with his left knee and that the original stress fracture was lower down in his leg. 

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. §1155; 38 C.F.R. § 4.1. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Veteran is appealing the assignment of a disability evaluation following an award of service connection for residuals of left leg stress fracture. As such, it is not the present level of disability which is of primary importance, but rather the entire period in question is to be considered to ensure that consideration is given to the possibility of staged ratings; that is, separate ratings for separate periods of time based on the facts found. Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran's residuals of a left leg stress fracture were assigned a zero percent rating pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5262 for impairment of the tibia and fibula. Pursuant to Diagnostic Code 5262, a 10 percent evaluation is warranted for malunion of the tibia and fibula with slight knee or ankle disability. Id. A 20 percent rating is warranted where there is malunuion of the tibia and fibula with moderate knee or ankle disability. Id. 

The rating schedule does not define the terms "slight," "moderate," or "marked," as used in the Diagnostic Codes to describe the degree of deformity in the lower extremities. Instead, adjudicators must evaluate all of the evidence and render a decision that is "equitable and just." 38 C.F.R. § 4.6 (2015).

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable rating are not met. 38 C.F.R. § 4.31 (2015).

The Veteran's service treatment records confirm that in January 1967, he reported that he twisted his left lower leg and experienced sharp pains and trouble walking. X-rays confirmed a left tibia stress fracture. X-rays taken in February and March 1967 showed a healing stress fracture at the left upper fibula. No residual disability was noted at an August 1970 separation examination.

The Veteran underwent VA examination in March 2009 at which time physical examination of the left leg demonstrated point tenderness in an area in the proximal third tibia. There was no muscle tenderness throughout the anterior tibialis or calf. On x-ray, there was no evidence of fracture or other abnormality in the left tibia-fibula. The examiner diagnosed left tibia point tenderness as likely as not related to old stress fracture, bilateral anterior leg pain including muscles of the entire leg unrelated to stress fracture and likely a residual of spinal stenosis, and mild numbness of the second and third toes of each foot also most likely related to spinal stenosis. 

While the issues of entitlement to service connection for residuals of a left knee replacement, and entitlement to compensation under 38 U.S.C.A. § 1151 for residuals of left knee surgery are being referred for consideration by the AOJ, at this time neither service connection nor compensation pursuant to 38 U.S.C.A. § 1151, has been established for any left knee disorder. Nevertheless, if there is evidence of malunion or nonunion of the tibia and fibula in the record the Board will, pursuant to Diagnostic Code 5262, consider the nature of any left knee disability resulting there from. 

The Board notes that the Veteran has never voiced complaints with respect to his left ankle due to malunion and nonunion of the tibia and fibula, and as the record shows no left ankle disability due to such malunion, there will be no discussion whether malunion or nonunion of the left tibia and fibula causes a left ankle disability.

The Veteran underwent VA examination on August 24, 2012 at which time the examiner determined that with regard to the proximal fibular shaft stress fracture, the bone did not articulate with the knee and that shaft fractures did not cause internal knee derangements. The examiner determined that the Veteran had no current residuals from the fracture.

The Veteran underwent VA examination on July 20, 2015 at which time the examiner determined that "current residuals are difficult to fully separate out given the [V]eteran's peripheral polyneuropathy and very complicated [total knee arthroplasty] with multiple surgeries on the left, but do more likely than not include mild angulation left fibula and some focal pain in this proximal lateral leg region (which is not a primary complaint for the [V]eteran and does not cause ongoing disability for him in comparison to the residuals from the difficult [non-service connected total knee arthroplasty] and infection surgeries)." The examiner continued on to connect any left knee neuropathy to the total knee arthroplasty stating that the "Left knee pain and decreased [range of motion] is due to the [total knee arthroplasty], infection and skin grafting, and heterotopic ossification, all of which are related to the original [total knee arthroplasty] surgery." 

The examiner described the stress fracture as sounding fairly significant and that the that it "is at least as likely as not that the current left deformity seen on x-ray is due to the left fibular 'stress fracture' in service," he pointed out that the fibula does not provide significant structural support for the knee; the tibia was not involved in his original injury; and the current angulation of the fibula was very minimal and had been stable over the last two x-rays so it was not causing any significant biomechanical impacts. The examiner continued to state that it was less likely as not that the current left knee condition was related to the left fibular stress fracture in service. There was no mention in the examiner's report of any evidence of the malunion or nonunion in the left knee required for a compensable rating under 38 C.F.R. § 4.71a, Diagnostic Code 5262.

In September 2015, the AOJ increased the evaluation of residuals of a left leg stress fracture to 10 percent disabling, effective July 20, 2015. This rating was based on painful motion of the knee under 38 C.F.R. §4.59, which allows consideration of functional loss due to painful motion to be rated to at least the minimum compensable rating for a particular joint. Significantly, contrary to Diagnostic Code 5262 it was not based on malunion and nonunion of the tibia and fibula, and as noted, the appellant is not service connected for a left knee disorder. 

While the appellant reports left knee problems, these problems are not currently service connected and have not been shown to be related to his stress fracture residuals. The record continues to show no medical evidence of malunion or nonunion of the tibia and fibula during the appellate term. Absent evidence showing either malunion or nonunion of the tibia and fibula, a compensable rating is not in order under Diagnostic Code 5262. 38 C.F.R. § 4.71a. Thus, the Board cannot assign a compensable evaluation, at any time since August 25, 2012, pursuant to 38 C.F.R. § 4.71a, Diagnostic Code 5262. 

In reaching this decision, the Board considered the Veteran's lay statements. He is competent to report his own observations with regard to the severity of his left leg, including reports of pain. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board finds his statements to be credible and consistent with the rating assigned. To the extent he argues his symptomatology is more severe, his statements must be weighed against the other evidence of record. Here, the specific examination findings of trained health care professionals are of greater probative weight than the Veteran's more general lay assertions.

As described above, the Veteran has complained of general leg pain and trouble sleeping as a result, but he also later states that the trouble sleeping is related to the pain in his knee. The Veteran seems to be conflating his service connected left fibula fracture with his non-service-connected left knee pain and neuropathy. These two claims are different and, although the VA examiner stated that the residuals of this injury were difficult to separate out from residuals due to his multiple knee replacements, he does point out that the "fibula does not provide significant structural support for the knee; the tibia was not involved in the original injury; and the current angulation of the fibula is very minimal and has been stable over the last (two) x-rays ... not causing any significant biomechanical impacts." The VA examiner clearly explained that the service connected fibula fracture did not affect the Veteran's left knee. 

The Board is also unable to assign a compensable evaluation under 38 C.F.R. § 4.59. That regulation does not consider bone pain itself as a separate rating and, in fact, its very title assumes pain on motion of the joint. The fibula does not move, and this service-connected injury is not related to the nonservice connected knee injury. The Veteran does not have arthritis of the fibula, and any arthritis or painful motion of the knee that is present is not service-connected. The pain he is describing in his left leg is primarily associated with a left knee disorder, which is not service connected, and not the service connected fibula stress fracture residuals. While the Veteran does have some fibula pain, that is not a joint and pain alone does not entitle him to a 10 percent evaluation. As such, a compensable rating for painful motion under 38 C.F.R. § 4.59 for the period since August 25, 2012 is not appropriate. 

Noting that the presence of the required evidence of malunion or nonunion under Diagnostic Code 5262 is absent from the record during the entire period on appeal, and that 38 C.F.R. § 4.59 is not an appropriate regulation for a lower leg fibula fracture residuals claim, any increase of the 10 percent rating assigned from July 20, 2015 would also be inappropriate. There is no evidence in the July 2015 VA examination that his left leg fracture has gotten worse or is causing the knee instability cited by the Veteran. The examiner concretely stated that the fibula fracture had been stable over the last two X-rays and is "not causing any significant biomechanical impacts." Without evidence of malunion and nonunion of the fibula and fibula together with a moderate knee disability an increased rating is not in order.

The Board is aware that an extraschedular rating is a component of an increased rating claim. Barringer v. Peake, 22 Vet. App. 242 (2008); see Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996). The threshold factor for extraschedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available scheduler evaluations for the service-connected disability at issue are inadequate. Thun v. Peake, 22 Vet. App. 111 (2008); see Fisher v. Principi, 4 Vet. App. 57, 60 (1993); 38 C.F.R. § 3.321(b)(1) (2015). If so, factors for consideration in determining whether referral for an extraschedular rating is warranted include marked interference with employment or frequent periods of hospitalization that indicate that application of the regular scheduler standards would be impracticable. Thun, 22 Vet. App. 111, citing 38 C.F.R. § 3.321(b)(1). In the present case, the Board finds no evidence that the Veteran's service-connected residuals of a left leg stress fracture present such an unusual or exceptional disability picture at any time so as to require consideration of an extra scheduler evaluation pursuant to the provisions of 38 C.F.R. § 3.321(b)(1). 

After reviewing all of the evidence of record, the Board finds that the severity of the Veteran's residuals of left leg stress fracture, including the combined effects of his PTSD, diabetes, tinnitus, and bilateral hearing loss, are adequately contemplated by the rating schedule, and that an extraschedular evaluation is not warranted. 
 
The rating criteria pertaining to residuals of tibia and fibula impairment focus on impairment due to malunion or nonunion and knee or ankle disability. As noted above, the medical evidence indicates that the Veteran's left knee symptoms are not attributable to the service-connected left lower leg disability and pertinent left ankle symptoms have not been reported. In his testimony before the Board, the Veteran never mentioned any pain in his ankles specifically and often only referred to his leg pain generally. He also specifically mentioned the knee as the location of pain in his leg. The Veteran further stated that the pain pills he takes to help him sleep are ineffective at combatting the pain in his knee. The only mention of any pain in his lower leg or shin area is in a VA examination where the doctor noted some focal pain in this proximal lateral leg region. This pain is not manifested by any malunion or nonunion, relating to either the tibia or fibula. 

There is no evidence that the Veteran's left leg stress fracture residuals have had any impact on his occupational functioning, and they have not required any medical treatment during the period on appeal. As such, the Veteran's disability picture is contemplated by the rating schedule and the scheduler rating criteria are adequate to address his symptoms and average impairment of earning capacity. Therefore, the threshold factor for extraschedular consideration under step one of Thun has not been met. As the disability picture is contemplated by the rating schedule, the assigned scheduler rating is, therefore, adequate. Consequently, referral for extraschedular consideration is not required under 38 C.F.R. § 3.321 (b)(1).

The Board acknowledges the judicial holding in Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). In that decision, the United States Court of Appeals for Veterans Claims held that a request for a total rating based on individual unemployability, whether expressly raised by the Veteran or reasonably raised by the record, is not a separate "claim" for benefits, but rather, can be part of a claim for increased compensation. In other words, if the claimant or the evidence of record reasonably raises the question of whether the Veteran is unemployable due to a disability for which an increased rating is sought, then part and parcel with the increased rating claim is the issue whether a total disability evaluation based on individual unemployability due to service connected disorders is warranted as a result of that disability. 

This case differs, however, because a formal claim for individual unemployability was considered and denied by the RO in September 2012, during the pendency of the claim now on appeal to the Board and the Veteran did not disagree with that determination. Nothing in Rice suggests that the finality of that decision can be overcome by subsequent allegations that the Veteran is entitled to a total rating (that is - by a subsequent informal claim). 

VA can bifurcate adjudication of the question of entitlement to individual unemployability and increased rating claims, as long as the claimant has reasonable notice that this is being done. Here, the Veteran received independent adjudication of the question of individual unemployability from the RO, with a notice letter that informed him he had to appeal if he disagreed with the denial. The issue was not included in a supplemental statement of the case issued in August 2013. Such actions explicitly and implicitly informed the Veteran that VA considers adjudication of the claim for a total disability evaluation based on individual unemployability due to service connected disorders and the increased rating claims on appeal to be separate and distinct issues. Therefore, in the factual and legal circumstances of this case, the Board declines to apply Rice and take jurisdiction over a claim for a total disability evaluation based on individual unemployability due to service-connected disorders.

In sum, the preponderance of the evidence weighs against finding that a compensable rating from August 25, 2012 to July 19, 2015 and against entitlement to a rating in excess of 10 percent since July 20, 2015 is warranted. 

In reaching this decision the Board considered the doctrine of reasonable doubt, however, as the preponderance of the evidence is against the appellant's claim, the doctrine is not for application. Gilbert v. Derwinski, 1 Vet.App. 49 (1990).

ORDER

Entitlement to compensable evaluation for residuals of a left leg stress fracture, from August 25, 2012 to July 19, 2015, is denied.

Entitlement to an evaluation in excess of 10 percent for residuals of a left leg stress fracture, since July 20, 2015 is denied. 

____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs