http://www.va.gov/vetapp16/Files2/1617326.txt

Citation Nr: 1617326 
Decision Date: 04/29/16 Archive Date: 05/04/16

DOCKET NO. 12-26 148 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma

THE ISSUES

1. Entitlement to service connection for arthritis.

2. Entitlement to a rating in excess of 20 percent for dextroconvex, degenerative arthritis, vertebral body compression deformity at L1.

REPRESENTATION

Appellant represented by: Mary M. Long, Attorney

ATTORNEY FOR THE BOARD

K. Marenna, Counsel

INTRODUCTION

The Veteran served on active duty from October 1953 to August 1954.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a June 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

The Veteran was scheduled for a Board videoconference hearing in February 2014. However, in a February 2014 letter, the Veteran's representative withdrew the hearing request. Thus, the hearing request was withdrawn.

The case was previously before the Board in June 2014 and remanded for additional development. For the reasons discussed below, the Board finds that there was substantial compliance with the remand order in regard to the Veteran's increased rating claim. See Stegall v. West, 11 Vet. App. 268 (1998).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issues of entitlement to service connection for arthritis is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.

FINDING OF FACT

For the entire disability rating period under appeal, the service-connected dextroconvex, degenerative arthritis, vertebral body compression deformity at L1, was not manifested by forward flexion of the thoracolumbar spine limited to 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine.

CONCLUSION OF LAW

The criteria for an initial disability rating in excess of 20 percent for the service-connected dextroconvex, degenerative arthritis, vertebral body compression deformity at L1, have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.10, 4.40, 4.45, 4.59, 4.7, 4.71a, Diagnostic Code (DC) 5242 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). VA has met all statutory and regulatory notice and duty to assist provisions as to the appellant's increased rating claims. Appropriate notice was provided in a March 2011 letter. 

VA's duty to assist has been satisfied. The Veteran's service treatment records and VA medical records are in the file. Private medical records identified by the Veteran have been obtained, to the extent possible. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claims.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the appellant. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the appellant's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2014).

The RO provided the Veteran appropriate VA examinations in April 2011 and October 2014. The examinations are adequate for the Veteran's increased rating claim because they are based on a thorough examination and a description of the Veteran's pertinent medical history. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). The October 2014 VA examination was adequate, and completed in compliance with the mandates of the Board's June 2014 remand order. See Stegall v. West, 11 Vet. App. 268 (1998).

The Veteran has not reported receiving any recent treatment specifically for this condition and there are no records suggesting an increase in disability has occurred as compared to the prior VA examination findings. There is no objective evidence indicating that there has been a material change in the severity of the service-connected disorder since he was last examined. 38 C.F.R. § 3.327(a). The duty to assist does not require that a claim be remanded solely because of the passage of time since an otherwise adequate VA examination was conducted. VAOPGCPREC 11-95. The VA examination reports are thorough and provided findings pertinent to the rating criteria. The examinations in this case are adequate upon which to base a decision.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Newhouse v. Nicholson, 497 F.3d 1298 (Fed. Cir. 2007).

II. Increased Rating Claim

Legal Criteria

Disability evaluations are determined by comparing a veteran's present symptomatology with the criteria set forth in the Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. 4.1 (2015). When a question arises as to which of two ratings applies under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the appellant. 38 C.F.R. § 4.3. 

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential in determining the level of current impairment that the disability is considered in the context of the entire recorded history. 38 C.F.R. § 4.1. Nevertheless, where, as here, the Veteran is appealing the rating for an already established service-connected condition, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The Veteran's lumbar spine disability is rated under Diagnostic Code 5242, for degenerative arthritis of the spine. Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine, (for DCs 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes). Under the General Rating Formula for Diseases and Injuries of the Spine, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease: A 20 percent rating is warranted for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating is warranted for unfavorable ankylosis of the entire spine. Id.

The Notes following the General Rating Formula for Diseases and Injuries of the Spine provide further guidance in rating diseases or injuries of the spine. Note (1) provides that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be rated separately under an appropriate DC. 38 C.F.R. § 4.71a, DCs 5235-5243 (2015).

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. 

Under DC 5243, intervertebral disc syndrome or disc disease (IVDS), may be rated under the General Rating Formula for Diseases and Injuries of the Spine, which includes combining separate evaluations of the chronic orthopedic and neurologic manifestations, or under the Formula for Rating IVDS Based on Incapacitating Episodes, which are rated on the total duration of incapacitating episodes over the past 12 months, whichever results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25 (2015). Under the Formula for Rating IVDS Based on Incapacitating Episodes, if there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, a 20 percent rating is warranted. If there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, a 40 percent rating is warranted. If there are incapacitating episodes having a total duration of at least six weeks during the past 12 months, a 60 percent rating is warranted. 38 C.F.R. § 4.71a, DC 5243 (2015).

Note 1 to DC 5243 defines an incapacitating episode as a period of acute signs and symptoms that requires bed rest prescribed by and treatment by a physician. Supplementary information in the published final regulations states that treatment by a physician would not require a visit to a physician's office or hospital but would include telephone consultation with a physician. If there are no records of the need for bed rest and treatment, by regulation, there are no incapacitating episodes. Id.

The Board has thoroughly reviewed all the evidence in the claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, each piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The appellant must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000). The Board must assess the credibility and weight of all evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Analysis

The Board finds that the Veteran's dextroconvex, degenerative arthritis, vertebral body compression deformity at L1 has symptoms that most nearly approximate the criteria for a 20 percent rating under Diagnostic Code 5242. For the reasons that follow, the Board finds that a rating in excess of 20 percent is not warranted.

The evidence does not show that the Veteran's thoracolumbar spine had forward flexion limited to 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. At the April 2011 VA examination, the Veteran's thoracolumbar spine had forward flexion to 65 degrees with pain at 65 degrees. Following repetitive range of motion testing, the thoracolumbar spine had flexion of 65 degrees, with no additional degree of limitation. The VA examiner noted the joint function of the spine was not additionally limited by pain, fatigue, weakness, lack of endurance or incoordination after repetitive use. The examiner noted there was no ankylosis of the thoracolumbar spine. At the October 2014 VA examination, the Veteran's thoracolumbar spine had forward flexion ending at 60 degrees with objective evidence of painful motion at 60 degrees. Following repetitive use testing, the thoracolumbar spine had flexion ending at 60 degrees, with no additional limitation in range of motion of the thoracolumbar spine. The Veteran did not have ankylosis of the spine. 

Consideration of a higher rating for functional loss, to include during flare-ups, due to these factors accordingly is warranted for DCs predicated on limitation of motion. 38 C.F.R. §§ 4.40 , 4.45, 4.59 (2014); DeLuca v. Brown, 8 Vet. App. 202 (1995). Such factors include more or less movement than normal, weakened movement, excess fatigability, incoordination, pain on movement, swelling, and deformity or atrophy of disuse. 38 C.F.R. § 4.45 (2015). Pain itself does not constitute functional loss, and painful motion does not constitute limited motion for the purposes of rating under DCs pertaining to limitation of motion. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Pain indeed must affect the ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance in order to constitute functional loss. Id. The provisions of 38 C.F.R. §§ 4.40, 4.45, and 4.59 (2014) concerning functional loss due to pain, fatigue, weakness, or lack of endurance, incoordination, and flare-ups have been considered in the above analysis. See Deluca v. Brown, 8 Vet. App. 202, 206 -08 (1995), 38 C.F.R. § 4.71a , DC 5242 (2014). Even with consideration of the Veteran's pain on movement of the spine, the thoracolumbar spine had flexion of more than 30 degrees with pain beginning at greater than 30 degrees during the period on appeal. Even following repetitive use, the thoracolumbar spine had flexion greater than 30 degrees. Therefore, the Veteran did not meet the criteria for the next higher rating of 40 percent under Diagnostic Code 5242, even with consideration of functional loss.

The April 2011 VA examination and October 2014 VA examination reports indicate the Veteran did not have intervertebral disc syndrome or incapacitating episodes. Therefore, a rating under the diagnostic criteria for intervertebral disc syndrome is not warranted.

The Board has considered whether the Veteran has any neurological disabilities related to his service-connected lumbar spine disability. The April 2011 VA examination report found there were no sensory deficits from L1-L5. There was no lumbosacral motor weakness. The lower extremities showed no signs of pathologic reflexes. At the October 2014 VA examination, muscle strength testing, reflex testing, and sensory examinations were normal. The VA examiner found the Veteran did not have radicular pain or any other signs or symptoms due to radiculopathy. The VA examiner further found the Veteran did not have any other neurologic abnormalities or findings related to a thoracolumbar spine condition, such as bowel or bladder problems/pathologic reflexes. 

The Board has considered the Veteran's reported symptoms. As a lay person, he is competent to report symptoms capable of lay observation, such as pain. At the April 2011 VA examination, the Veteran reported it was difficult to drive long distances and work on a computer. He also stated it was difficult to sleep at night. At the October 2014 VA examination, the Veteran reported having occasional flare ups of pain that lasted 1 week to 10 days. He stated that he took Motrin as needed. The Board finds the Veteran's statements to be credible. However, his statements do not show that his back disability is worse than the already assigned 20 percent disability rating.

Having carefully considered the Veteran's claim in light of the evidence of record, as well as the applicable law and regulation, the Board finds that the currently assigned 20 percent rating for dextroconvex, degenerative arthritis, vertebral body compression deformity, is appropriate and no higher rating is warranted at this time, to include "staged" ratings. The Veteran's lumbar spine disability does not meet the Diagnostic Criteria for a higher rating at any time during the period on appeal. Accordingly, entitlement to a rating in excess of 20 percent for the Veteran's lumbar spine disability is denied. 38 U.S.C.A. § 5107(b) (West 2002); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Extraschedular Considerations

Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). An extra-schedular disability rating would be warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2015). See also Thun v. Peake, 22 Vet. App. 111 (2008). 

The schedular rating in this case is adequate. The diagnostic criteria contemplate and adequately describe the symptomatology of the Veteran's service-connected lumbar spine disability, including less movement than normal and pain on movement. See Thun, 22 Vet. App. at 115. When comparing the Veteran's back symptoms with the schedular criteria, the Board finds that his symptoms of less movement than normal and pain on movement are congruent with the disability picture represented by the 20 percent rating assigned herein. See 38 C.F.R. § 4.71a, DC 5242 (2015). Accordingly, a comparison of the Veteran's symptoms and functional impairments resulting from the back disability with the pertinent schedular criteria does not show that his service-connected back disability presents "such an exceptional or unusual disability picture... as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b) (2015).

 Consequently, the Board finds that the available schedular rating is adequate to rate the Veteran's back disability. Based on this threshold finding, there is no need to consider whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization. See Thun, 22 Vet. App. at 118-19 (holding that the Board's finding that the rating criteria were adequate to evaluate the veteran's disability was a sufficient basis for denying extraschedular consideration without regard to whether there was marked interference with employment). As such, referral for extraschedular consideration is not warranted. See VAOPGCPREC 6-96.

Under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

TDIU

Additionally, the Board is cognizant of the ruling of the United States Court of Appeals for Veterans Claims (Court) in Rice v. Shinseki, 22 Vet. App. 447 (2009). In Rice, the Court held that a claim for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. In this case, the Veteran has not specifically argued, and the record does not otherwise reflect, that his service-connected disabilities render him unable to secure or follow a substantially gainful occupation. The record does not reflect that he cannot work because of his service-connected disabilities. The October 2014 VA examiner noted that the Veteran was retired. The examiner found the Veteran's lumbar spine disability affected his ability to work. He would be limited in those occupations that required heavy or unassisted lifting, repetitive rotation of the back, carrying, pushing or pulling heavy objects, vibrational stresses, overhead work, and prolonged sitting. He was limited in prolonged standing and walking and would need allowance for rest periods every 30 minutes. However, the VA examiner did not indicate the Veteran was unable to work due to his service-connected disabilities and the Veteran has not asserted that he is unable to work. Accordingly, the Board concludes that a claim for TDIU has not been raised. The Veteran certainly may raise this claim in the future, should he choose to do so.

ORDER

Entitlement to a rating in excess of 20 percent for dextroconvex, degenerative arthritis, vertebral body compression deformity at L1, is denied.

REMAND

In regard to the Veteran's claim for entitlement to service connection for arthritis, the Board finds that there has not been substantial compliance with the mandates of the Board's June 2014 remand order. In the remand, the VA examiner was instructed to identify any arthritis present and provide an opinion as to whether any arthritis identified is related to service. The Board noted that the Veteran's December 2011 problem list indicated he had osteoarthritis and that the Veteran had reported that he had experienced pain since an automobile accident in service in 1953. 

In an October 2014 opinion, the VA examiner only addressed where the Veteran had degenerative arthritis of the lumbar spine that was incurred or caused by military service. The VA examiner found it is as likely as not that the Veteran's degenerative arthritis of the lumbar spine was caused by back condition that occurred in service. The Veteran is already service-connected for degenerative arthritis of the spine. However, the VA examiner did not address whether the Veteran had any other arthritis diagnosis, such as the osteoarthritis noted in the December 2011 problem list. The Veteran's VA treatment records also indicate he has been diagnosed with degenerative joint disease of the cervical spine and knees. See June 2015 VA treatment record. In his September 2011 notice of disagreement, the Veteran stated that he experienced pain throughout his body, and that he has experienced pain since the 1953 automobile accident. As the VA examiner only addressed the Veteran's back arthritis, there was not substantial compliance with the remand order. Where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance. See Stegall v. West, 11 Vet. App. 268 (1998). Consequently, the claim must be remanded for a new VA examination.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the following:

(a) Identify any arthritis present, to include osteoarthritis, degenerative joint disease of the cervical spine and degenerative joint disease of the bilateral knees.

(b) Provide an opinion as to whether it is at least as likely as not (at least a 50 percent probability) that any arthritis identified, to include osteoarthritis, degenerative joint disease of the cervical spine and degenerative joint disease of the bilateral knees, is related to service.

Forward the claims file to the examiner for review. The VA clinician is requested to provide a thorough rationale for any opinion provided. If the clinician is unable to provide an opinion without resorting to speculation, the clinician should explain why a definitive opinion cannot be provided.

2. Thereafter, readjudicate the issue on appeal of entitlement to service connection for arthritis. If the benefit sought is not granted, issue a supplemental statement of the case and afford the appellant an appropriate opportunity to respond. The case should then be returned to the Board, as warranted.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MILO H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals

 

Department of Veterans Affairs