Citation Nr: 1714089 
Decision Date: 04/28/17 Archive Date: 05/05/17

DOCKET NO. 10-27 622A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to an evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to an evaluation in excess of 10 percent for peripheral neuropathy of the left lower extremity prior to May 18, 2016, and in excess of 20 percent thereafter.

3. Entitlement to a compensable evaluation for hypertension.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

G. Slovick, Counsel
INTRODUCTION

The Veteran served on active duty from July 1967 to December 1973.

These matters come before the Board of Veterans' Appeals (Board) on appeal from regional office (RO) August 2013 (higher ratings for peripheral neuropathy of the left lower extremity and hypertension), and May 2014 (higher rating for PTSD). 

The appeal was last remanded in July 2016 for further development. Since that time, in a September 2016 rating decision, the Veteran's disability rating was increased to 20 percent for left lower extremity peripheral neuropathy effective May 18, 2016. The issue has been changed above to reflect that decision.

In certain circumstances, a claim for total disability rating based on individual unemployability due to service connected disabilities (TDIU rating) can be inferred as part of a claim for increased compensation. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Here, however, the Veteran has stated, most recently in April 2016, that he is gainfully employed, therefore a TDIU claim has not been raised by the record.

The issue of entitlement to an increased rating for diabetes mellitus, type II has been raised by the record in a October 2016 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9 (b) (2016).


FINDINGS OF FACT

1. The Veteran's PTSD most nearly approximates deficiencies in most areas of work, school, family relationships, thinking, judgment, and mood without total occupational and social impairment.

2. Prior to May 12, 2015, the Veteran's left lower extremity neuropathy was manifested by mild incomplete paralysis.

3. From May 13, 2015, the Veteran's left lower extremity neuropathy was manifested by moderate incomplete paralysis. 

4. The Veteran's hypertension requires continuous medication for control without a history of diastolic pressure predominantly 100 or more or systolic pressure predominantly 160 or more.


CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 70 percent for PTSD are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.7, 4.130, Diagnostic Code 9411 (2016).

2. Prior to March 12, 2015, the criteria for a rating in excess of 10 percent for peripheral neuropathy of the left lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. § 4.124a, Diagnostic Codes 8720, 8721 (2016).

3. From March 12, 2015 to May 18, 2016, the criteria for a rating in excess of 20 percent, but no higher, for peripheral neuropathy of the left lower extremity have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. § 4.124a, Diagnostic Codes 8720, 8721 (2016).

4. From May 18, 2016, the criteria for a rating in excess of 20 percent for peripheral neuropathy of the left lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. § 4.124a, Diagnostic Codes 8720, 8721 (2016).

5. The criteria for a compensable rating for hypertension are not met. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.3, 4.7, 4.104, Diagnostic Code 7101 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

With respect to the Veteran's claims herein, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

VA has also complied with the November 2015 and July 2016 remand orders of the Board. In response to the Board's remands, additional VA treatment records were obtained and the evidence was reconsidered in supplemental statements of the case. 

The Board finds substantial compliance with the directives of the remand. See Stegall v. West, 11 Vet. App. 268 (1998). Therefore, the Board may proceed to adjudicate the appeal.

Under these circumstances, the Board finds that the Veteran is not prejudiced by appellate consideration of the claim on appeal at this juncture, without directing or accomplishing any additional notification and/or development action.

Increased Ratings Generally 

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7 . After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is reviewed when making disability ratings. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). 

Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App 505 (2007). Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 .

PTSD

The Veteran seeks a higher initial evaluation in excess of 70 percent of his PTSD. His disability is currently rated under a general set of criteria applicable to psychiatric disabilities found at 38 C.F.R. § 4.130, Diagnostic Code 9411. 

Under the general rating formula, a 70 percent evaluation is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine actives; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); inability to establish and maintain effective relationships. Id. 

A maximum 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

In evaluating the Veteran's level of disability, the Board has considered the Global Assessment of Functioning (GAF) scores as one component of the overall disability picture. GAF is a scale used by mental health professional and reflects psychological, social, and occupational functioning on a hypothetical continuum of mental health illness and is relevant in evaluating mental disability. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995); see also Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV)).

A GAF of 41 to 50 signifies serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id. 

Effective August 4, 2014, VA amended the portion of the Rating Schedule dealing with mental disorders and its adjudication regulations that define the term "psychosis" to remove outdated references to the DSM-IV and replace them with references to the recently updated Fifth Edition (DSM-5). See 79 Fed. Reg. 149, 45094 . The provisions of the interim final rule apply to all applications for benefits that are received by VA or that were pending before the AOJ on or after August 4, 2014. Id. VA adopted as final, without change, the interim final rule and clarified that the provisions of this interim final rule do not apply to claims that have been certified for appeal to the Board or are pending before the Board as of August 4, 2014. See 80 Fed. Reg. 53, 14308 (March 19, 2015). 

As the Veteran's claim was certified for appeal before the Board prior to August 4, 2014, on remand, both the DSM-IV and DSM-V criteria are considered in the analysis below. See 38 C.F.R. § 4.125 (a); 80 Fed. Reg . 14308 (March 15, 2015) (final rule amending 38 C.F.R. § 4.125 ).

The Board notes that the use of GAF scores has been abandoned in the DSM-V because of, among other reasons, "its conceptual lack of clarity" and "questionable psychometrics in routine practice." See Diagnostic and Statistical Manual for Mental Disorders, Fifth edition, p. 16 (2013). In this case, however, DSM-IV was in use at the time many of the medical entries of record were made. Thus, the GAF scores assigned remain relevant for consideration in this appeal.

When determining the appropriate rating to be assigned for a service-connected mental health condition, the Board will identify not only the symptoms associated with that disability but also the frequency, severity, and duration of those symptoms and how they affect the Veteran's occupational and social impairment. Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002).

A 100 percent rating is warranted if the service-connected PTSD causes total occupational and social impairment, regardless of whether the Veteran has some, all, or none of the symptoms listed in the rating formula, and regardless of whether his symptoms are listed in the Rating Schedule. See Mauerhan v. Principi, 16 Vet App 436, 442-3 (2002); see also Sellers v. Principi, 372 F.3d 1318, 1326 (Fed. Cir. 2004).

After review of the evidence, the Board finds that the Veteran's PTSD does not cause total occupational and social impairment.

This finding is supported by the Veteran's VA medical center treatment notes and his April 2014 and April 2016 VA examination reports.

The claims file includes a world Health Organization Disability assessment dated in April 2014. The report is shown to indicate functionality on a scale of 0-100, with 0 being no disability and 100 being full disability. The Veteran was found to have a score of 50 of 100 in cognition, 40 out of 100 in self-care, 66 of 100 in getting along, 50 in work school life activities. When considering each domain, cognition, mobility, self-care, getting along, life activities (household) life activities (work/school) and participation, the Veteran was assigned a 50 out of 100. 

The Veteran was afforded a VA examination in April 2014. Following physical examination, the Veteran was found to have occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood, the criteria for a 70 percent disability rating.

The examiner found that the Veteran's ability to understand and follow instructions was not impaired, nor was his ability to retain instructions or sustain concentration to perform simple tasks. The Veteran's ability to sustain concentration to task persistence and pace was considered mildly impaired. The Veteran's ability to respond appropriately to coworkers, supervisors, or the general public was considered mildly impaired as was his ability to respond appropriately to changes in the work setting. The Veteran admitted to suicidal ideation but states he wouldn't act on these thoughts because of his daughter and grandchildren and he denies any current plan.

A May 2014 VA medical center treatment notes include the Veteran's complaint of difficulty working due to worsening symptoms related to the suicide of his son. The Veteran reported passive thoughts throughout the week of death and dying but denied current suicidal or homicidal ideations, intent or plans. It was noted that the Veteran was sobbing throughout his visit when talking about constant intrusive thoughts. Mental status examination noted that the Veteran was appropriately dressed and groomed with normal speech and logical thought process without hallucinations. The Veteran's diagnoses included PTSD and bereavement. A GAF score of 51 was provided.

In a May 2014 statement, the Veteran stated that his PTSD was worse. In a December 2014 statement, the Veteran stated that he struggled to maintain a workable existence. He stated that he was constantly on guard. 

The Veteran reported worsening of his PTSD symptoms during a VA medical center visit in August 2014. He described poor sleep, flashbacks, irritability, poor concentration and anger outbursts. He stated that he felt that the suicide of his son worsened those symptoms to the point that it was difficult to work. The Veteran reported continued trust issues primarily with work but felt his mood would improve with his planned move. The Veteran continued to have passive thoughts of being better off dead but denied any current suicidal or homicidal ideations, intent or plans. He stated that when he was around his daughter he did not have any of these thoughts but was focused on helping her. There was no evidence of mania or psychotic symptoms. 

Mental status examination revealed that the Veteran was appropriately dressed and groomed with good hygiene. The Veteran was interactive and cooperative with good eye contact, speech was normal, thought process was logical, there were no hallucinations, delusions or paranoia noted. The Veteran's mood was depressed, anxious, tearful, angry and irritable and cognition was grossly intact. A GAF score of 52 was assigned.

In a May 2015 statement in support of his claim, the Veteran stated that he had anxiety which was worse than ever. He stated that he was hypervigilant and easily startled. He stated that as he aged he had become more paranoid and trusted no one. The Veteran described trouble sleeping and fear of crowds. He reported panic attacks in the past and flashbacks. 

A July 2015 treatment note included a report of the Veteran's discord with his wife, the Veteran stated that he wanted to go fishing but still worked full time though he dreaded going to plane crashes (as part of his job) and explained that he had a severe fugue state at the last one he investigated and had a flashback. It was noted that the Veteran was alert and oriented in all spheres and able to establish rapport. His speech was fluent and normal in tone, rate and volume and thought processes were logical and goal-directed. The Veteran denied perceptual disturbances. There was no expressed delusional content. Suicidal and homicidal ideations were denied
within the past thirty days and there has been no self-injurious behavior. It was noted that the Veteran's cognition was grossly intact and his insight was good. Judgment and impulse control were adequate. It was noted that the Veteran was able to cope with stress and tolerate frustration. 

An October 2015 VA treatment note reported that the Veteran was alert and oriented in all spheres and able to establish rapport. Mood was basically euthymic. Affect was fully reactive. Speech was fluent and normal in tone, rate and volume. Thought processes were logical and goal-directed. The veteran denied perceptual disturbances. There was no expressed delusional content. Suicidal and homicidal ideations were denied within the past thirty days and there has been no self-injurious behavior. Cognition was grossly intact. Insight was good. Judgment and impulse control were adequate.

In his June 2016 substantive appeal, the Veteran stated that he believed that his symptoms warranted a 100 percent disability rating. The Veteran stated that he had persistent flashbacks, that he was negligent of personal hygiene, his memory was worse and that he had frequent thoughts of suicide. 

At his April 2016 VA examination, the VA examiner concluded that the Veteran's PTSD manifested by occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. 

The examiner noted that the Veteran was dressed appropriately and with good hygiene. It was noted that the Veteran appeared alert and oriented to time, place, and person. The Veteran was cooperative and responsive to questions, with appropriate eye contact throughout the interview. His mood was reported as "depressed" and affect was mood congruent and ranging. Speech was spontaneous with normal rhythm, rate, tone, and volume. The Veteran's thought processes were linear and thought content appeared goal-directed and free of paranoia, delusions, obsessions, and ideas of reference. The examiner found that the Veteran did not appear to be responding to internally generated sensory experiences. The Veteran denied suicidal and homicidal ideation.

In an October 2016 correspondence, the Veteran stated that he had memory loss for names of own occupation or own name which was intermittent, gross impairment in thought processes or communication which was intermittent, disorientation to time or place which was intermittent and intermittent inability to perform activities of daily living. 

In this case, the Veteran has not demonstrated total occupational and social impairment. The Veteran's impairment due to PTSD is clear and uncontested. However, the severity of impairment is not shown most closely approximated by the 100 percent disability rating. The Veteran is not shown to be unable to perform activities of daily living, the Veteran's hygiene is not shown to be inadequate. The record demonstrates that the Veteran is oriented with logical thought processes and communication. While the Veteran is shown to have problems with irritability, he is not shown to have grossly inappropriate behavior nor has the evidence demonstrated that the Veteran poses a persistent danger of hurting himself or others. As noted by the Veteran, some of the symptoms described by the 100 percent disability rating are demonstrated, however symptoms which rise to the level described in that rating are simply not shown. 

In so finding, the Board notes that a 70 percent disability rating most accurately summarizes the severity of the Veteran's symptoms is not meant in any way to undervalue the impact of the Veteran's PTSD on his life. Rather, it demonstrates the level of severity described by the 100 percent rating. 

While the Veteran's GAF scores alone cannot serve as the sole basis for evaluating the Veteran's PTSD here, the support the Board's finding that a 100 percent disability rating is not warranted by the evidence. The Veteran's May 2014 GAF score of 51, August 2014 treatment note reported a GAF score of 52, both suggest serious but not total impairment which is congruent with the assignment of a 70 percent disability rating. 

In sum, the preponderance of the evidence is against a rating in excess of 70 percent for service connection for the PTSD.

Lower Left Extremity Peripheral Neuropathy

The Veteran contends that his lower left extremity peripheral neuropathy warrants a higher disability rating. The Veteran is presently in receipt of a 10 percent disability rating prior to May 18, 2016 and of a 20 percent disability rating thereafter under 38 C.F.R. § 4.124a, Diagnostic Code 8721 (2016). Of note, the Veteran's May 2016 VA examination found that the Veteran's diabetic peripheral neuropathy affected the sciatic, rather than popliteal, nerve which is considered under Diagnostic Code 8520. Thus both diagnostic codes will be addressed below. 

Diagnostic Code 8521 addresses neuralgia of the external popliteal nerve. Under DC 8521, mild incomplete neuropathy warrants a 10 percent disability rating under. Id. Moderate incomplete neuralgia of the external popliteal nerve warrants a 20 percent rating. Id. Severe incomplete neuralgia of the external popliteal nerve warrants a 30 percent rating. Id. Complete paralysis of the external popliteal nerve with foot drop and slight droop of the first phalanges of all toes, inability to dorsiflex the foot, loss of extension (dorsal flexion) of proximal phalanges of the toes; lost abduction of the foot; weakened adduction; and anesthesias covering the entire dorsum of the foot and toes warrants a 40 percent disability rating. Id.

Under Diagnostic Code 8520, a 10 percent rating is assigned for mild incomplete paralysis of the sciatic nerve; a 20 percent rating is assigned for moderate incomplete paralysis of the sciatic nerve; a 40 percent rating is assigned for moderately severe incomplete paralysis; and a 60 percent rating is assigned for severe incomplete paralysis, with marked muscular atrophy. A maximum 80 percent rating is assigned for complete paralysis of the sciatic nerve; the foot dangles and drops, no active movement possible of muscles below the knee, flexion of knee weakened or (very rarely) lost. 38 C.F.R. § 4.124a, Diagnostic Code 8520.

The Board notes that words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be just. 38 C.F.R. § 4.6 . Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Rather, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C.A. § 7104; 38 C.F.R. §§ 4.2, 4.6. In applying the schedular criteria for rating peripheral nerve disabilities, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. 38 C.F.R. § 4.124a. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree.

At an August 2012 VA examination, the Veteran reported that his neuropathy was worse since his last examination and that he has pain, numbness and tingling. Following physical examination the Veteran was found to have mild incomplete paralysis due to neuropathy. 

In a May 2015 statement in support of his claim, the Veteran explained that he experienced a loss of feeling in his left foot and toes which was worse. He described almost constant pain and stated that it was virtually impossible to walk due to the severe pain first thing in the morning. 

In his June 2015 substantive appeal form, the Veteran reported that he had peripheral neuropathy which was so bad that he experienced difficulty walking. The Veteran reported constant pain and stated that his big toe was "like dead meat." A July 2015 VA medical center treatment note included the Veteran's complaints of pain in his legs and difficulty walking. The Veteran reported no feeling in his left big toe. 

At his May 2016 VA examination, the Veteran stated that his big toe was numb most of the time. He described burning pain from the knee to the foot daily. The Veteran stated that he had recently begun to take Gabapentin for neuropathic pain but had not noticed any change yet. The Veteran was found to have moderate paresthesias and/or dysesthesias in the left lower extremity and mild numbness in the left lower extremity. Neurologic examination demonstrated absent vibration sensation in the left lower extremity, there was no muscle atrophy, or trophic changes. Moderate incomplete paralysis of the left sciatic nerve was reported. 

The Veteran is shown to have submitted statements in support of his claim that his neuropathy was increasingly worse after the time of his August 2012 VA examination. The Board finds especially significant the Veteran's May 2015 statement in which the Veteran is shown to report difficulty walking and increased symptoms which appear to be objectively confirmed by VA treatment notes two months later and again confirmed by clinical testing a year later a the Veteran's May 2016 VA examination. 

As the Veteran's lay observations are confirmed by later objective medical findings, and resolving the benefit of the doubt in the Veteran's favor, the Board finds that a 20 percent disability rating for moderate incomplete paralysis of the left lower extremity is warranted effective May 12, 2015, the date in which the RO received the Veteran's statement that his condition was worse. 

Prior to that time, however, the August 2012 VA medical examination reflects the Veteran's mild incomplete paralysis of the sciatic nerve of the left lower extremity. The evidence of record does not demonstrate moderate incomplete paralysis of the sciatic nerve such that would warrant a higher, 20 percent rating.

From May 12, 2015, the objective evidence does not reflect that the Veteran's left lower extremity's severity as moderately severe, severe, marked with muscular atrophy, or complete paralysis of the sciatic nerve, thus an evaluation in excess of 20 percent is not warranted.

Hypertension

Diagnostic Code 7101 provides a 10 percent evaluation when diastolic pressure is predominantly 100 or more, or when systolic pressure is predominantly 160 or more, or for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. Id. 

A 20 percent rating is warranted when diastolic pressure is predominantly 110 or more, or; systolic pressure is predominantly 200 or more. A 40 percent evaluation requires diastolic pressure of predominantly 120 or more. Id. 

Hypertension or isolated systolic hypertension must be confirmed by readings taken two or more times on at least three different days. For purposes of this section, the term hypertension means that the diastolic blood pressure is predominantly 90mm. or greater, and isolated systolic hypertension means that the systolic blood pressure is predominantly 160mm. or greater with a diastolic blood pressure of less than 90mm. Id. Thus, the 10 percent rating for hypertension contemplates diastolic pressure predominantly 100 or more, or systolic pressure predominantly 160 or more. In order to warrant a higher evaluation, there must be diastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more. Such findings have not been demonstrated in the present case

The Board finds that the Veteran's hypertension does not most nearly approximate the criteria associated with a 10 percent rating. The disability requires control with continuous medication, but the Veteran's blood pressure readings have not approximated a history of diastolic pressure predominantly 100 or more or systolic pressure predominantly 160 or more. 

Blood pressure readings upon VA examinations in June 2013 and May 2016 showed diastolic and systolic readings well below the levels contemplated by a compensable 10 percent evaluation. 

Post-service treatment records also document blood pressure readings that do not most nearly approximate diastolic pressure predominantly 100 or more or systolic pressure predominantly 160 or more. The Veteran's treatment records demonstrate that the Veteran must use continuous medication to control his blood pressure but that the use of this medication is effective. The Veteran's hypertension responds well to medication according to the VA examiners who also found there was no functional impairment associated with the service-connected condition. This is also shown by the Veteran himself who, in a May 2015 statement in support of his claim, stated that he was taking two medications for his blood pressure and that it was generally within a normal range. It is therefore clear that the Veteran's hypertension most nearly approximates the criteria associated with the current noncompensable evaluation under Diagnostic Code 7101.

Additional Considerations

In reaching the conclusions above, the Board has also considered whether the Veteran is entitled to a greater level of compensation for the disability at issue on an extraschedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321 (b) (1) (2015); Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluation for the service-connected disability is inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as 'governing norms.' Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

In the case at hand, the record reflects that the manifestations of the hypertension, neuropathy and PTSD are not in excess of those contemplated by the schedular criteria. 

The Veteran's symptoms are not outside the realm of what is contemplated. The Veteran has not described any exceptional or unusual features associated with the service-connected disability being rated herein. 

As the Board finds that the Veteran's disability picture is contemplated by the rating schedule, the inquiry ends and the Board need not consider whether the disability picture exhibits other related factors such as marked interference with employment and frequent periods of hospitalization. The Board, therefore, has determined that referral of this case for extra-schedular consideration pursuant to 38 C.F.R. 3.321 (b) (1) is not warranted.

In addition, the record does not indicate that the Veteran manifests additional symptoms or disability that is attributable to the combined effect of his multiple service-connected conditions or is not adequately contemplated by the rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (2014); Yancy v. McDonald, No. 14-3390 (U.S. Vet. App. February 26, 2016).


ORDER

Entitlement to an evaluation in excess of 70 percent for posttraumatic stress disorder (PTSD) is denied.

Entitlement to a disability rating in excess of 10 percent for peripheral neuropathy of the left lower extremity prior to May 13, 2015 is denied.

Entitlement to a disability rating of 20 percent, but no higher, from May 13, 2015 to May 17, 2016 is granted, subject to the laws and regulations governing the payment of monetary benefits.

Entitlement to a disability rating in excess of 20 percent for peripheral neuropathy 

of the left lower extremity from May 18, 2016, is denied.

Entitlement to a compensable evaluation for hypertension is denied.




______________________________________________
M.H. HAWLEY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs